UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AKBAR ALI GREENE, DAMIEN HASSAN, ERIC JENKINS, CALVAIN LOPEZ, JUAN MARQUEZ, FRANCISCO SANTANA, *and* LAMONT WHEELER, | Case No. 22 CV 723 (GHW) |
| -against- | **SECOND AMENDED COMPLAINT** |
| TEITEL BROS., INC., *doing business as* TEITEL BROTHERS WHOLESALE AND RETAIL GROCERY COMPANY, *and* GILBERT TEITEL, EDWARD TEITEL, *and* WILLIAM FASSBENDER, *individually*, | *Demand for Jury* |
| Defendants. | |

Plaintiffs, Akbar Ali Greene, Damien Hassan, Eric Jenkins, Calvain Lopez, Juan Marquez, Francisco Santana, and Lamont Wheeler (collectively, "Plaintiffs"), by and through their undersigned attorneys, Cilenti & Cooper, PLLC, respectfully file this Second Amended Complaint against Defendants, Teitel Bros., Inc., doing business as Teitel Brothers Wholesale and Retail Grocery Company, located at 2372 Arthur Avenue, Bronx, New York 10458 (hereinafter, "Teitel Bros.") and Gilbert Teitel, Edward Teitel and William Fassbender, individually, (all defendants collectively, the "Defendants"), and state as follows:

## **INTRODUCTION**

1.     Plaintiffs allege that, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), they are entitled to recover from the Defendants: (1) unpaid wages and minimum wages for hours worked; (2) unpaid overtime compensation; (3) liquidated damages; (4) prejudgment and post-judgment

interest; (5) compensatory and punitive damages for illegal retaliation; and (6) attorneys' fees and costs.

2.  Plaintiffs further allege that, pursuant to the New York Labor Law, they are entitled to recover from the Defendants: (1) unpaid wages and minimum wages for hours worked; (2) unpaid overtime compensation; (3) unpaid "spread of hours" premium for each day they worked in excess of ten (10) hours; (4) liquidated damages and statutory penalties pursuant to the New York Wage Theft Prevention Act; (5) prejudgment and post-judgment interest; (6)  compensatory and punitive damages for illegal retaliation; and (7) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.  This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

4.  Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391 because the conduct making up the basis of the complaint took place in this judicial district.

## PARTIES

5.  Plaintiffs are adult residents New York City and are each former employees of Defendants.

6.  Defendant, Teitel Bros., Inc., is a business entity existing and doing business under the laws of the State of New York, with a principal place of business at 2372 Arthur Avenue, Bronx, New York 10458.

7.      Upon information and belief, Defendant, Gilbert Teitel, is an owner, officer, director and/or managing agent of Teitel Bros., whose address is unknown at this time and who participated in the day-to-day operations of Teitel Bros. and acted intentionally and maliciously and is an "employer" pursuant to the FLSA, 29 U.S.A §203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is jointly and severally liable with Teitel Bros.

8.      Upon information and belief, Defendant, Edward Teitel, is an owner, officer, director and/or managing agent of Teitel Bros., whose address is unknown at this time and who participated in the day-to-day operations of Teitel Bros. and acted intentionally and maliciously and is an "employer" pursuant to the FLSA, 29 U.S.A §203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is jointly and severally liable with Teitel Bros.

9.      Upon information and belief, Defendant, William Fassbender, is an owner, officer, director and/or managing agent of Teitel Bros., whose address is unknown at this time and who participated in the day-to-day operations of Teitel Bros. and acted intentionally and maliciously and is an "employer" pursuant to the FLSA, 29 U.S.A §203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is jointly and severally liable with Teitel Bros.

10.     Defendant Gilbert Teitel exercised sufficient control over Teitel Bros.' day-to-day operations as to be considered an employer of Plaintiffs and those similarly situated under the FLSA and New York Labor Law.

11.     Defendant Edward Teitel exercised sufficient control over Teitel Bros.' day-to-day operations as to be considered an employer of Plaintiffs and those similarly situated under the FLSA and New York Labor Law.

12.     Defendant William Fassbender exercised sufficient control over Teitel Bros.' day-to-day operations as to be considered an employer of Plaintiffs and those similarly situated under the FLSA and New York Labor Law.

13.     Defendant, Gilbert Teitel, is an individual who, upon information and belief, owns the stock of Teitel Bros., owns Teitel Bros., and manages and makes all business decisions, including but not limited to, the decisions of what salary the employees will receive and the number of hours the employees will work. Gilbert Teitel was present at the store on a daily basis and actively manages its operations.

14.     Defendant, Edward Teitel, is an individual who, upon information and belief, owns the stock of Teitel Bros., owns Teitel Bros., and manages and makes all business decisions, including but not limited to, the decisions of what salary the employees will receive and the number of hours the employees will work. Edward Teitel supervised Plaintiffs and other employees, and had the power to engage employees and terminate them.

15.     Defendant, William Fassbender, is an individual who, upon information and belief, owns the stock of Teitel Bros., owns Teitel Bros., and manages and makes all business decisions, including but not limited to, the decisions of what salary the

employees will receive and the number of hours the employees will work. William Fassbender supervised Plaintiffs and other employees, and had responsibility for implementing payroll practices of the corporate defendant.

16.     The individual defendants exercised control over the terms and conditions of Plaintiffs' employment in that they had and have the power to: (i) hire and fire employees, (ii) determine rates and methods of pay, (iii) determine work schedules, (iv) supervise and control work of the employees, including Plaintiffs, and (v) otherwise affect the quality of the employees' employment.

17.     Plaintiff, Akbar Ali Greene, was employed by Defendants in Bronx County, New York, as a driver for Defendants' wholesale and retail gourmet grocery supply business, known as "Teitel Bros." from 2014 through December 29, 2021.

18.     Plaintiff, Damien Hassan, was employed by Defendants in Bronx County, New York, as a driver's helper for Defendants' wholesale and retail gourmet grocery supply business, known as "Teitel Bros." from March 2015 through April 2022.

19.     Plaintiff, Eric Jenkins, was employed by Defendants in Bronx County, New York, as a driver's helper and driver for Defendants' wholesale and retail gourmet grocery supply business, known as "Teitel Bros." from December 2018 through his termination on April 9, 2022, with the exception of approximately three (3) months during the beginning of the Covid-19 pandemic, when he was not working.

20.     Plaintiff, Calvain Lopez, was employed by Defendants in Bronx County, New York, as a driver's helper and later as a driver for Defendants' wholesale and retail gourmet grocery supply business, known as "Teitel Bros." from July 2018 through December 2019; and July 17, 2020 through January 2022.

21.     Plaintiff, Juan Marquez, was employed by Defendants in Bronx County, New York, as a driver for Defendants' wholesale and retail gourmet grocery supply business, known as "Teitel Bros." from April 2019 through his termination on or about October 27, 2022, with the exception of October 9, 2020 through September 2021.

22.     Plaintiff, Francisco Santana, was employed by Defendants in Bronx County, New York, as a driver for Defendants' wholesale and retail gourmet grocery supply business, known as "Teitel Bros." from March 2018 through April 2020, except for approximately one (1) month, in May 2019.

23.     Plaintiff, Lamont Wheeler, was employed by Defendants in Bronx County, New York, as a driver's assistant and driver for Defendants' wholesale and retail gourmet grocery supply business, known as "Teitel Bros." from 2016 through late 2018; and September 2021 through his termination on April 22, 2022.

24.     At all relevant times, Teitel Bros. was, and continues to be, an "enterprise engaged in commerce" within the meaning of the FLSA.

25.     At all relevant times, the work performed by Plaintiffs, was directly essential to the business operated by Teitel Bros.

26.     Plaintiffs and other employees worked directly for the corporate and individual defendants.

27.     At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs lawfully earned wages and minimum wages for hours worked, in contravention of the FLSA and New York Labor Law.

28.     At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs lawfully earned overtime compensation in contravention of the FLSA and New York Labor Law.

29.     At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs lawfully earned "spread of hours" premiums in contravention of the New York Labor Law.

30.     Plaintiffs have fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## **STATEMENT OF FACTS**

### a. **Plaintiff Akbar Ali Greene**

31.     In 2014, Plaintiff, Akbar Ali Greene, was hired by Defendants to work as a driver for Defendants' wholesale and retail grocery store business, known as "Teitel Bros.", located at 2372 Arthur Avenue, Bronx, New York 10458.

32.     Plaintiff, Akbar Ali Greene, worked continuously for the Defendants from 2014 through December 29, 2021.

33.     Plaintiff, Akbar Ali Greene's duties were to transport food items from Teitel Bros. and its suppliers at Hunts Points Market, to stores and restaurants in the New York Metropolitan area.

34.     At all relevant times during Akbar Ali Greene's employment by Defendants, he worked well over forty (40) hours per week. Plaintiff generally worked twelve (12) or more hours per shift, and he worked five (5) shifts per week. Plaintiff always worked at least sixty (60) hours per week, and often more, especially during holiday periods.

35.     Plaintiff Akbar Ali Greene was not paid wages for all hours worked, or overtime wages. Plaintiff was paid on a *salary basis*. Plaintiff Akbar Ali Green was paid a weekly salary of seven hundred fifty dollars ($750.00) during the last three (3) years of his employment (2019 through 2021). In 2018, Plaintiff was paid a weekly salary of six hundred fifty dollars ($650.00). In 2014 through 2017, Plaintiff was paid a weekly salary of five hundred fifty dollars ($550.00).

36.     Plaintiff Akbar Ali Greene was always paid "off the books", in cash. He was not provided a wage statement or other documentation of his hours and wages. His employer did not keep track of his working hours on a daily basis. Plaintiff was paid a fixed salary, not based on his working hours, and he was not paid additional compensation for hours worked beyond forty (40), each week. He was not paid hourly.

### b.  Plaintiff Damien Hassan

37.     In March 2015, Plaintiff, Damien Hassan, was hired by Defendants to work as a driver's assistant/helper for Defendants' wholesale and retail grocery store business, known as "Teitel Bros.", located at 2372 Arthur Avenue, Bronx, New York 10458.

38.     Plaintiff, Damien Hassan, worked continuously for the Defendants from March 2015 through April 2022.

39.     Plaintiff's duties were to load and unload food items from Teitel Bros. and its suppliers warehouses, stores and restaurants in the New York Metropolitan area.

40.     At all relevant times during Plaintiff's employment by Defendants, he worked well over forty (40) hours per week. Plaintiff generally worked twelve (12) or

more hours per shift, and he worked five (5) shifts per week. Plaintiff always worked at least sixty (60) hours per week, and often more, especially during holiday periods.

41.     Plaintiff was not paid wages for all hours worked, or overtime wages. Plaintiff was paid on a *salary basis*. Plaintiff Damien Hassan was paid a weekly salary of eight hundred dollars ($800.00) during the last several weeks of his employment (March and April 2022). In 2021-early 2022, Plaintiff was paid a weekly salary of seven hundred dollars ($700.00). In 2019 - 2020, Plaintiff was paid a weekly salary of six hundred fifty dollars ($650.00). In 2017 – 2018, Plaintiff was paid a weekly salary of six hundred dollars ($600.00). In 2016, Plaintiff was paid a weekly salary of five hundred fifty dollars ($550.00). In 2015, Plaintiff was paid a weekly salary of four hundred ninety-five dollars ($495.00).

42.     Plaintiff Damien Hassan was always paid "off the books", in cash. He was not provided a wage statement or other documentation of his hours and wages. His employer did not keep track of his working hours on a daily basis. Plaintiff Damien Hassan was paid a fixed salary, not based on his working hours, and he was not paid additional compensation for hours worked beyond forty (40), each week. He was not paid hourly.

### c.  Plaintiff Eric Jenkins

43.     In December 2018, Plaintiff, Eric Jenkins, was hired by Defendants to work as a driver for Defendants' wholesale and retail grocery store business, known as "Teitel Bros.", located at 2372 Arthur Avenue, Bronx, New York 10458.

44.     With the exception of approximately three (3) months at the start of the Covid-19 pandemic, Plaintiff, Eric Jenkins, worked continuously for the Defendants from

2018 through April 9, 2022, when he was terminated within days after he filed a consent to become a party plaintiff in this action.

45.    Plaintiff's duties were to assist with the loading, unloading, and transporting of food items from Teitel Bros. and its suppliers at the company's warehouse, markets, stores, and restaurants in the New York Metropolitan area.

46.    At all relevant times during Plaintiff Eric Jenkins' employment by Defendants, he worked well over forty (40) hours per week. Plaintiff generally worked twelve (12) or more hours per shift, and he worked five (5) shifts per week. Plaintiff always worked at least sixty (60) hours per week, and often more, especially during holiday periods.

47.    Plaintiff Eric Jenkins was not paid wages for all hours worked, or overtime wages. Plaintiff was paid on a *salary basis*. Plaintiff Eric Jenkins was paid a weekly salary of six seven hundred dollars ($700.00) during the last several weeks of his employment (beginning in February 2022). In 2020 through February 2022, Plaintiff was paid a weekly salary of six hundred dollars ($600.00). In 2018 through 2019, Plaintiff was paid a weekly salary of five hundred fifty dollars ($550.00).

48.    Plaintiff Eric Jenkins was always paid "off the books", in cash. He was not provided a wage statement or other documentation of his hours and wages. His employer did not keep track of his working hours on a daily basis. Plaintiff was paid a fixed salary, not based on his working hours, and he was not paid additional compensation for hours worked beyond forty (40), each week. He was not paid hourly.

### d. Plaintiff Calvain Lopez

49.     In July 2018, Plaintiff, Calvain Lopez, was hired by Defendants to work as a driver's helper for Defendants' wholesale and retail grocery store business, known as "Teitel Bros.", located at 2372 Arthur Avenue, Bronx, New York 10458.

50.     Plaintiff, Calvain Lopez, worked continuously for the Defendants from July 2018 through December 2019; he returned in July 2020 and was promoted to driver in January 2021. He left his employment in January 2022.

51.     Plaintiff's duties were to assist with the loading, unloading, and transporting of food items from Teitel Bros. and its suppliers at the company's warehouse, markets, stores, and restaurants in the Northeast.

52.     At all relevant times during Plaintiff's employment by Defendants, he worked well over forty (40) hours per week. Plaintiff generally more than twelve (12) hours per shift, and he worked five (5) shifts per week. Plaintiff usually worked at least seventy-five (75) or more hours per week.

53.     Plaintiff was not paid wages for all hours worked, or overtime wages. Plaintiff was paid on a *salary basis*. Plaintiff Calvain Lopez was paid a weekly salary of seven hundred fifty dollars ($750.00) in 2021 through the end of his employment in January 2022. In July 2020 through the end of 2020, Plaintiff was paid a weekly salary of six hundred dollars ($600.00). In 2018 through 2019, Plaintiff was paid a weekly salary of five hundred fifty dollars ($550.00).

54.     Plaintiff Calvain Lopez was often paid "off the books", in cash. At times, he was paid partly by check. He was never provided a wage statement or other documentation of his hours and wages. His employer did not keep track of his working

hours on a daily basis. Plaintiff was paid a fixed salary, not based on his working hours, and he was not paid additional compensation for hours worked beyond forty (40), each week. He was not paid hourly.

### e. Plaintiff Juan Marquez

55.     In April 2019, Plaintiff, Juan Marquez, was hired by Defendants to work as a driver for Defendants' wholesale and retail grocery store business, known as "Teitel Bros.", located at 2372 Arthur Avenue, Bronx, New York 10458.

56.     Plaintiff, Juan Marquez, worked continuously for the Defendants from April 2019 through his termination on October 27, 2022, with the exception of approximately one (1) year, between October 9, 2020 through September 2021.

57.     Plaintiff's duties were and are to transport and assist with the transporting of food items from Teitel Bros. and its suppliers to stores and restaurants in New York and surrounding areas.

58.     At all relevant times during Plaintiff Juan Marquez' employment by Defendants, he has worked well over forty (40) hours per week. Plaintiff generally worked ten (10) to twelve (12) or more hours per shift, and he worked five (5) shifts per week. Plaintiff normally worked at least fifty (50) hours per week, and often more, especially during holiday periods. He typically started his day at approximately 6:30 a.m. and ended it after 5:00 p.m.

59.     Plaintiff was not paid wages for all hours worked, or overtime wages. Plaintiff was paid on a *salary basis*. Plaintiff Juan Marquez was paid a weekly salary of nine hundred dollars ($900.00) beginning in mid-March 2022, for approximately two (2)

weeks. After he joined the lawsuit in or about March 28, 2022, his salary was reduced to seven hundred dollars ($700.00) per week.

60.     Plaintiff Juan Marquez was paid a salary of seven hundred fifty dollars ($750.00) in early March 2022, and seven hundred dollars ($700.00) in January and February 2022. In September 2021 through the end of 2021, Plaintiff Juan Marquez was paid a weekly salary of six hundred seventy-five dollars ($675.00). In June 2020 through September 2021, Plaintiff Juan Marquez was paid a weekly salary of six hundred fifty dollars ($650.00). In 2019 through June 2020, Plaintiff Juan Marquez was paid a weekly salary of six hundred dollars ($600.00).

61.     Plaintiff was paid "off the books", in cash. He was not provided a wage statement or other documentation of his hours and wages. His employer did not keep track of his working hours on a daily basis. Plaintiff was paid a fixed salary, not based on his working hours, and he was not paid additional compensation for hours worked beyond forty (40), each week. He was not paid hourly.

62.     Plaintiff Juan Marquez was terminated while on vacation on or about October 27, 2022. He received a text message which attached a letter claiming his termination was due to "unacceptable behavior".

63.     Juan Marquez was terminated because he participated in and refused to drop out of the lawsuit brought by himself and other similarly situated employees.

### f.  Plaintiff Francisco Santana

64.     In March 2018 through April 2020, except for one (1) month in May 2019, Plaintiff, Francisco Santana worked as a driver and driver's helper for Defendants'

wholesale and retail grocery store business, known as "Teitel Bros.", located at 2372 Arthur Avenue, Bronx, New York 10458.

65.     Plaintiff's duties were to transport food items from Teitel Bros. and its suppliers at Hunts Points Market, to stores and restaurants in the New York area, as well as Connecticut and New Jersey.

66.     At all relevant times during Plaintiff's employment by Defendants, he worked well over forty (40) hours per week. Plaintiff generally worked twelve (12) or more hours per shift, and he worked five (5) shifts per week. Plaintiff always worked approximately sixty (60) or more hours per week.

67.     Plaintiff Francisco Santana was not paid wages for all hours worked, or overtime wages. Plaintiff was paid on a *salary basis*. Plaintiff Francisco Santana was paid a weekly salary of six hundred fifty dollars ($650.00) in 2019 through the end of his employment. In 2018, Plaintiff was paid a weekly salary of six hundred dollars ($600.00).

68.     Plaintiff was always paid "off the books", in cash. He was not provided a wage statement or other documentation of his hours and wages. His employer did not keep track of his working hours on a daily basis. Plaintiff was paid a fixed salary, not based on his working hours, and he was not paid additional compensation for hours worked beyond forty (40), each week. He was not paid hourly.

### g.  Plaintiff Lamont Wheeler

69.     In 2016, Plaintiff, Lamont Wheeler, was hired by Defendants to work as a driver for Defendants' wholesale and retail grocery store business, known as "Teitel Bros.", located at 2372 Arthur Avenue, Bronx, New York 10458.

70.     Plaintiff, Lamont Wheeler, worked continuously for the Defendants from 2016 through late 2018; he returned in September 2021 and worked continuously until his termination on April 22, 2022, within days after he filed a consent to become a party plaintiff in this action.

71.     Plaintiff's duties were to transport food items from Teitel Bros. and its suppliers at Hunts Points Market, to stores and restaurants in the New York Metropolitan area.

72.     At all relevant times during Plaintiff's employment by Defendants, he worked well over forty (40) hours per week. Plaintiff generally worked eleven (11) or more hours per shift, and he worked five (5) shifts per week. Plaintiff often worked approximately (55) hours per week, and often more, especially during holiday periods.

73.     Plaintiff was not paid wages for all hours worked, or overtime wages. Plaintiff was paid on a *salary basis*. Plaintiff Lamont Wheeler was paid a weekly salary of six hundred fifty dollars ($650.00) beginning in September 2021 through the end of his employment. In 2016 through 2018, Plaintiff Lamont Wheeler was paid a weekly salary of six hundred dollars ($600.00).

74.     Until the end of his employment, Plaintiff Lamont Wheeler was paid "off the books", in cash. He was not provided a wage statement or other documentation of his hours and wages. His employer did not keep track of his working hours on a daily basis. Plaintiff was paid a fixed salary, not based on his working hours, and he was not paid additional compensation for hours worked beyond forty (40), each week. He was not paid hourly.

75.     Defendants knowingly and willfully operated and continue to operate their business with a policy of not paying either the FLSA minimum wage or the New York State minimum wage to the Plaintiffs, for some hours they worked.

76.     Defendants knowingly and willfully operated their business with a policy of not paying Plaintiffs either the FLSA overtime rate (of time and one-half), or the New York State overtime rate (of time and one-half), in direct violation of the FLSA and New York Labor Law and the supporting federal and New York State Department of Labor Regulations.

77.     Defendants knowingly and willfully operated their business with a policy of not paying the New York State "spread of hours" premium to Plaintiffs.

78.     At all relevant times, upon information and belief, and during the course of Plaintiffs' employment, the Defendants failed to maintain accurate and sufficient time records.

79.     At relevant times, Plaintiffs were paid "off the books", in cash.

80.     At relevant times, Plaintiffs, were paid less than the statutory minimum wage.

81.     Plaintiffs were entitled to be paid at the rate of time and one-half the statutory minimum for all hours worked in excess of forty (40) per week.

**STATEMENT OF CLAIM**
**COUNT I**
**[Violation of the Fair Labor Standards Act]**

82.     Plaintiffs re-allege and re-aver each and every allegation and statement contained in paragraphs "1" through "81" of this Second Amended Complaint as if fully set forth herein.

83.     At all relevant times, upon information and belief, Defendants were and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

84.     Upon information and belief, at all times relevant to the allegations in this Complaint, the corporate defendant, Teitel Bros. (i) had employees engaged in commerce or in the production of goods for commerce, or that handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, and (ii) has and has had an annual gross volume of sales of not less than $500,000.

85.     At all relevant times, Defendants employed Plaintiffs within the meaning of the FLSA.

86.     Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.

87.     Plaintiffs worked hours for which they were not paid the statutory minimum wage.

88.     Plaintiffs worked over forty (40) hours per week.

89.     Plaintiffs were usually paid wages in cash.

90.     Work performed above forty (40) hours per week (overtime) was not paid at time and one-half the statutory minimum rate as required by state and federal law.

91.     At all relevant times, Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiffs for some hours worked.

92.     Defendants failed to pay Plaintiffs minimum wages in the lawful amount for all hours worked.

93.     Plaintiffs were entitled to be paid at the rate of time and one-half the statutory minimum for all hours worked in excess of the maximum hours provided for in the FLSA.

94.     Defendants failed to pay Plaintiffs overtime compensation in the lawful amount for all hours worked in excess of the maximum hours provided for in the FLSA.

95.     At all relevant times, Defendants had, and continues to have a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiffs for all hours worked in excess of forty (40) hours per work week, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

96.     Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs at the statutory minimum wage rate and the statutory overtime rate of time and one-half for all hours worked in excess of forty (40) hours per week, when they knew or should have known such was due and that non-payment of minimum wages and overtime pay would financially injure Plaintiff.

97.     Defendants failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.A. §§ 201, *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

98.     Defendants failed to properly record, report, credit and/or compensate their employees, including Plaintiffs.

99.     Records, if any, concerning the number of hours worked by Plaintiffs and the actual compensation paid to Plaintiffs are in the possession and custody of the Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

100.    Record in possession of the Defendants may be inaccurate or false because, at all relevant times, the Defendants failed to maintain time records. Plaintiffs were not permitted to punch a time clock or otherwise keep track of their working hours.

101.    Defendants failed to properly disclose or apprise Plaintiffs of their rights under the FLSA.

102.    As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs are entitled to liquidated damages pursuant to the FLSA.

103.    Due to the intentional, willful and unlawful acts of the Defendants, Plaintiffs suffered damages in an amount not presently ascertainable of unpaid minimum wages and overtime compensation, an equal amount as liquidated damages, and prejudgment interest thereon.

104.    Plaintiffs are entitled to an award of their reasonable attorneys' fees, costs and expenses, pursuant to 29 U.S.C. § 216(b).

## COUNT II
### [Violation of the New York Labor Law]

105.     Plaintiffs re-allege and re-aver each and every allegation and statement contained in paragraphs "1" through "104" of this Second Amended Complaint as if fully set forth herein.

106.     At all relevant times, Plaintiffs were employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

107.     Defendants knowingly and willfully violated Plaintiffs' rights by failing to pay minimum wages in the lawful amount for hours worked.

108.     Defendants knowingly and willfully violated Plaintiffs' rights by failing to pay overtime compensation at rates of not less than one and one-half times the statutory minimum rate of pay for each hour worked in excess of forty (40) hours in a workweek.

109.     Defendants knowingly and willfully violated Plaintiffs' rights by failing to pay "spread of hours" premiums for each day they worked more than ten (10) hours pursuant to New York State Department of Labor Regulations §§137-1.7; 142-2.4.

110.     Defendants willfully disregarded and purposefully evaded record keeping requirements of the New York Labor Law by failing to maintain accurate and complete timesheets and payroll records.

111.     Due to the Defendants' New York Labor Law violations, Plaintiffs are entitled to recover from Defendants his unpaid minimum wages, unpaid overtime wages, unpaid "spread of hours" premiums, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law § 663(1) *et al*. and § 198. Plaintiff also seeks liquidated damages pursuant to New York Labor Law § 663(1).

## COUNT III
**[Statutory Penalties Pursuant to the New York State Wage Theft Prevention Act]**

112.    Plaintiffs re-allege and re-aver each and every allegation and statement contained in paragraphs "1" through "111" of this Second Amended Complaint as if fully set forth herein.

113.    The New York State Wage Theft Prevention Act requires every employer to notify its employees, in writing, among other things, of the employee's rate of pay and regular pay day.

114.    The New York State Wage Theft Prevention Act requires every employer to notify its employees, in writing, with every payment of wages, of the dates of work covered, the rate of pay and basis thereof, hours worked, gross wages, deductions, allowances, and net wages.

115.    Defendants did not provide Plaintiffs, with statements accurately accounting for their actual hours worked, and setting forth their hourly rate of pay, regular wage, and overtime wages.

116.    Upon information and belief, this was done to disguise the actual number of hours Plaintiffs worked, and to avoid paying them for their full hours worked; and, overtime due.

117.    Defendants willfully disregarded and purposefully evaded record keeping requirements of the New York Labor Law by failing to maintain accurate and complete timesheets and payroll records.

118.    Plaintiffs were not provided with true and accurate wage statements and annual wage notices, as required by law.

119.    At times relevant to this action Plaintiffs were paid cash, and not provided with a wage statement as required by law, New York Labor Law § 195(3).

120.    As a result of Defendant's violations of New York Labor Law § 195(1), for the period April 9, 2011 through present, Plaintiffs may recover statutory penalties, not to exceed a total of five thousand dollars ($5,000), together with costs and reasonable attorney's fees in accordance with New York Labor Law § 198 (1-b).

121.    As a result of Defendant's violations of New York Labor Law § 195(3), for the period April 9, 2011 and thereafter, Plaintiffs may recover statutory penalties for each work week Defendants failed to provide Plaintiffs with wage notices, not to exceed a total of five thousand dollars ($5,000), together with costs and reasonable attorney's fees in accordance with New York Labor Law § 198 (1-d).

122.    Defendants failed to comply with the notice and record keeping requirements of the New York State Wage Theft Prevention Act and as such are liable for civil penalties, attorneys' fees, and costs.

**COUNT IV**
**[Retaliation Under The Fair Labor Standards Act]**

123.    Plaintiffs re-allege and re-aver each and every allegation and statement contained in paragraphs "1" through "122" of this Second Amended Complaint as if fully set forth herein.

124.    Defendants retaliated against Plaintiffs Eric Jenkins and Lamont Wheeler by terminating their employment soon after they filed consents to sue, in this action.

125.    In October 2022 Defendants retaliated against Juan Marquez by terminated his employment based upon farcical claims of misbehavior, when in fact he was terminated because he was a plaintiff in the instant action.

126. The unlawful retaliatory discharge has resulted in loss of income to Plaintiffs Eric Jenkins and Lamont Wheeler.

127. Defendants' actions constitute unlawful retaliation, and if countenanced, such actions would have a chilling effect on the assertion by employees of their federal rights under the FLSA.

128. Defendants' actions constitute a violation of Section 15(a)(3) of the FLSA. 29 U.S.C. § 215(a)(3).

129. Plaintiffs, Eric Jenkins and Lamont Wheeler, have suffered economic damages as a result of Defendants' retaliatory and unlawful conduct.

130. Due to Defendants' retaliation under the FLSA, Plaintiffs, Eric Jenkins, Lamont Wheeler and Juan Marquez, are entitled to recover from Defendants compensatory damages and punitive damages for Defendants' reckless and willful disregard for Plaintiff's rights. Further, Plaintiffs, Eric Jenkins, Lamont Wheeler and Juan Marquez, are entitled to attorneys' fees, costs, interest, and such further relief as the court deems appropriate.

## COUNT V
### [Retaliation Under New York Labor Law]

131. Plaintiffs re-allege and re-aver each and every allegation and statement contained in paragraphs "1" through "130" of this Second Amended Complaint as if fully set forth herein.

132. Defendants retaliated against Plaintiffs Eric Jenkins and Lamont Wheeler by terminating their employment soon after they filed a consent to sue in this action.

133. Defendants retaliated against Juan Marquez by terminated his employment based upon farcical claims of misbehavior, when in fact he was terminated because he was a plaintiff in the instant action.

134. As a result, Defendants' actions constitute retaliatory actions that would have a chilling effect on the assertion by employees of their rights under the New York Labor Law.

135. Plaintiffs, Eric Jenkins and Lamont Wheeler, have suffered economic damages as a result of Defendants' retaliatory and unlawful conduct.

136. Due to Defendants' unlawful retaliation under the New York Labor Law, Plaintiffs Eric Jenkins, Lamont Wheeler and Juan Marquez, are entitled to recover from Defendants compensatory damages and punitive damages for Defendants' reckless and willful disregard for Plaintiffs' rights. Further, Plaintiffs are entitled to attorneys' fees, costs, interest, and such further relief as the Court deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, Akbar Ali Greene, Damien Hassan, Eric Jenkins, Calvain Lopez, Juan Marquez, Francisco Santana, and Lamont Wheeler, respectfully request that this Court grant the following relief:

(a) An award of unpaid wages, minimum wages, and overtime compensation due under the FLSA and New York Labor Law;

(b) An award of liquidated as a result of the Defendants' failure to pay overtime wages pursuant to 29 U.S.C. § 216;

(c) An award of liquidated damages and statutory penalties as a result of the Defendants' failure to pay wages pursuant to the New York Labor Law;

(d)     An award of penalties for failing to comply with the annual and weekly notice requirements of the New York State Wage Theft Prevention Act;

(e)     An award of prejudgment and post-judgment interest;

(f)     An award of compensatory and punitive damages associated with unlawful retaliatory acts of terminating the employment of Plaintiffs Eric Jenkins, Lamont Wheeler and Juan Marquez;

(g)     An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and,

(h)     Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues.

Dated: New York, New York
        November 7, 2022

Respectfully submitted,

CILENTI & COOPER, PLLC
**Attorneys for Plaintiffs**
60 East 42nd Street – 40th Floor
New York, New York 10165
Telephone  (212) 209-3933
Facsimile  (212) 209-7102
E-mail: pcooper@jcpclaw.com

By:     _____

        Peter Hans Cooper  (PHC 4714)